Linda V. BURKEY, Plaintiff,

v.

MARSHALL COUNTY BOARD OF
EDUCATION et al., Defendants.

Civ.A. No. 78–0012–W(H).

United States District Court,
N. D. West Virginia,
Wheeling Division.

March 16, 1981.

On Motion to Amend May 20, 1981.

Michael P. Malakoff, Louise R. Malakoff, Richard A. Finberg, Berger, Kapetan & Malakoff, Pittsburgh, Pa., Franklin D. Cleckley, Morgantown, W. Va., R. Lawrence Dessem, Washington, D. C., for plaintiff.

Paul T. Tucker, Bachmann, Hess, Bachmann & Garden, Wheeling, W. Va., for defendants Haskins, Eaton and Lydon.

Mark A. Karl, Moundsville, W. Va., for defendants Barger, Anderson, Cassis, Dobbs, Logston and Gould.

## MEMORANDUM ORDER CONTAINING FINDINGS OF FACT AND CONCLUSIONS OF LAW

HADEN, District Judge.

### I. PLAINTIFF LINDA V. BURKEY

1. Plaintiff, Linda V. Burkey, ["Burkey"] is a woman and a citizen of the United States and a resident of the State of West Virginia.

2. Mrs. Burkey is a 1970 graduate of West Liberty State College, where she was a member of four different school athletic teams, including girls' basketball, volleyball, softball and field hockey. Since her graduation from college, Mrs. Burkey has played independent league softball and coached girls' softball in a recreational league. In 1976 Mrs. Burkey received a masters degree in physical education from West Virginia University and thereafter she completed fifteen additional graduate credit hours beyond her masters degree.

3. Since July 1, 1970, to date, Burkey has been employed as a teacher by the Defendant Marshall County Board of Education ["the Board"]. After successfully completing a three school year probationary period, Mrs. Burkey achieved tenure within the Marshall County School District and has taught since the 1973–74 school year under a continuing contract with the Board. She has a permanent teaching certificate from the state of West Virginia. From 1971 until her transfer to the Washington Lands Elementary School in 1976, she coached girls' basketball at Moundsville Junior High School. Coaching appointments or contracts are made on a one school year basis and no teacher employed by the Board achieves tenure as a coach.

4. Prior to the 1971–72 school year no interscholastic sports program existed for girls at any of the junior high schools within the Marshall County School District. Opportunity to coach such sports was, therefore, limited to male teachers and opportunity to compete was limited to boys. During the 1971–72 school year Linda Burkey was responsible for forming an interscholastic girls' basketball team at Moundsville Junior High School. She continued to coach this team in the 1972–73, 1973–74, 1974–75, and 1975–76, school years, during which time her teams won thirty-one games, lost four and forfeited one game. On March 24, 1975, the Moundsville City Council passed a unanimous resolution congratulating her for coaching the team to the 1975 county championship. Plaintiff's Exhibit No. 5.

5. During her employment in the Marshall County School District, Mrs. Burkey has received written letters of recommendation from three principals who have directly supervised her work. These letters, from Defendant Robert Eaton (letter of January 3, 1973), David Gill (letter of May 27, 1977), and James Loew (letter of December 22, 1978), were uniformly favorable and described Mrs. Burkey as an "excellent teacher". Plaintiff's Exhibits Nos. 2, 3 and 4.

## II. DEFENDANTS

6. Defendant, Marshall County Board of Education, is ultimately responsible for the supervision and control of the Marshall County School District and the employment of its personnel.

7. Defendants Joseph E. Cassis, Chester H. Dobbs and George H. Logston are members of the Marshall County Board of Education, which Board exercises and has exercised ultimate authority over personnel matters pertaining to Mrs. Burkey and other employees of the Marshall County School District. These Defendants have been members of the Board since its hiring of Mrs. Burkey on July 1, 1970.

8. Defendant James Sherrill Wilson is a member of the Defendant board and has been a member of the Board since January 1, 1979.

9. Defendant Charles Barger is a member of the Defendant Board and has been a member of the Board since January 1, 1977.

10. Defendant Jack C. Gould was a member of the Defendant Board from the date of Linda Burkey's hiring by the Board on July 1, 1970, until December 31, 1976.

11. Defendant Carl L. Anderson was a member of the Defendant Board from the date of Linda Burkey's hiring by the Board on July 1, 1970, until December 31, 1978.

12. Defendant Donald A. Haskins is and has been Superintendent of the Marshall County Board of Education since July 1, 1972.

13. Defendant Robert R. Eaton is and has been Assistant Superintendent of the Marshall County Board of Education since July 1, 1972.

14. In those capacities, Haskins and Eaton were responsible for recommending and approving the transfer of Burkey as a teacher from Moundsville Junior High School to Washington Lands Elementary School and the termination of Burkey from her coaching position at Moundsville Junior High School at the conclusion of the 1975–76 school year.

15. The Defendant James P. Lydon is and has been Principal of Moundsville Junior High School since July 1, 1972. In that capacity he was responsible for initiating the recommendation for transfer of Burkey as a teacher from Moundsville Junior High School and her removal or termination from her coaching position.

16. All Defendants were sued in their official capacities and as individuals.[1]

### III. DEFENDANTS' SCHOOL ATHLETIC POLICIES

17. Prior to the 1973–74 school year women were not paid for coaching girls' junior high school athletics, although males were paid $380 for coaching boys' junior high school athletics. See Plaintiff's Exhibit Nos. 12A, 12B and 51.

18. In the 1973–74 through 1975–76 school year all women coaches of girls' junior high school sports, save one,[2] were uniformly paid one-half (½) of the salary which male coaches of comparable or identical boys' junior high school sports were paid. Two men who coached girls' junior high school sports were paid at the same salary level as women coaches of girls sports were paid.

19. Prior to October, 1973, no official policies existed for the administration of girls' interscholastic athletic programs in the Marshall County Schools. The "Policies Governing Marshall County Junior High School Athletic Programs", Plaintiff's Exhibit No. 7, were approved by the Board in June, 1969, but were explicitly limited to boys' interscholastic athletics.

20. In October, 1973, the Defendant Board adopted a statement of "Policies of Marshall County Girls Athletic Program." Plaintiff's Exhibit No. 9. These policies governed only girls' athletics at junior and senior high schools within the Marshall County School District during the 1973–74 school year, while boys' athletics at junior high schools within the District were governed during that school year by the "Governing Policies of Marshall County Junior High Athletic Programs," as revised July 11, 1973. Plaintiff's Exhibit No. 8. These separate governing documents explicitly established the following differences between boys' and girls'. junior high school interscholastic athletics:

(a) There was an athletic director for boys' but not for girls' interscholastic athletics;

(b) Only female faculty members could coach girls' athletics;

(c) Girls' sports were limited to one coach per sport, while there was no such restriction upon the number of coaches per boys' sports;

(d) Girls' junior high athletic teams were to include girls from the seventh, eighth, and ninth grades, while there were separate boys' athletic teams for each grade level at each junior high school;

(e) Girls' junior high school athletic teams could not play teams from outside Marshall County, while boys' teams were not so restricted;

(f) There was a limit placed upon the maximum number of games which the girls' teams could play, but no such

---

**1.** By order entered March 12, 1979, this Court noted the dismissal of all Plaintiff's claims against Defendants Haskins, Eaton and Lydon through settlement agreement and the execution of releases; but the order retained Haskins as a Defendant in his official capacity as Superintendent of the Board. The release excepted from its provision her claim of entitlement to back pay and other related equitable relief against Defendant Haskins.

**2.** At Cameron High School, the girls' tennis coach, a woman, was paid the same salary as the male tennis coach was paid. This was the sole exception to the pay policy in the school district.

limit was placed upon the number of games the boys' teams could play;

(g) The coaches of ninth grade boys' athletics were given the discretion to play or not play any team member in a particular game, while the coaches of girls' sports were required to permit each team member to play in every game; and

(h) An upper limit was placed upon the number of girls who could participate on girls' teams, while no such limit was set as to the size of boys' teams.

21. Defendants' statement of "Policies Marshall County Girls Athletic Program" was revised on June 25, 1974. Plaintiff's Exhibit No. 10. The "revised" policies perpetuated substantially all of the inequalities set forth in Paragraph 20, above.

22. In the 1975–76 school year Defendants abolished the separate policy statements for girls' and boys' sports and consolidated the school district's athletic policies into a document entitled "Policies Marshall County Athletic Program." Plaintiff's Exhibit No. 11.

23. Despite this consolidation of policy statement, female coaches of junior high school athletics, including Linda Burkey, were still uniformly paid one-half (½) of the salary that male coaches were paid to coach identical or comparable sports during the 1975–76 school year.

## IV. PLAINTIFF'S ATTEMPTS TO RESOLVE HER SEX DISCRIMINATION COMPLAINTS WITHIN THE SCHOOL SYSTEM

24. On September 11, 1973, after discussing their concerns with Carl F. Norman, their principal, Linda Burkey, Linda Campbell and Victoria Lavenski, the women physical education teachers at Moundsville Junior High School, wrote a letter to Defendant Haskins concerning the payment of women coaches of girls' athletics at Moundsville Junior High School. See Plaintiff's Exhibit No. 13. Defendant Haskins ignored the requested action and made no response to the letter.

25. On April 1, 1974, Mrs. Burkey and Mrs. Campbell filed a grievance with the Defendant Board challenging the discrimination against women coaches and girl athletes in the athletic policies and practices of the Marshall County School District.

26. Pursuant to the contract between the Defendant Board and the Marshall County Education Association, the grievance of Mrs. Burkey and Mrs. Campbell was processed. This process involved and included meetings between Mrs. Burkey and Mrs. Campbell and Carl F. Norman, their principal, Paul C. Crago, General Supervisor of the Marshall County School District, and Defendant Haskins. Burkey was complimented by Crago for her "demonstration of professionalism" in pursuit of the grievance. The grievance was ultimately denied by a unanimous decision of the Defendant Board on June 28, 1974. See Plaintiff's Exhibit No. 14.

## V. PLAINTIFF'S ATTEMPTS TO OBTAIN A RESOLUTION OF HER SEX DISCRIMINATION COMPLAINTS THROUGH THE ADMINISTRATIVE AGENCIES OF THE STATE AND FEDERAL GOVERNMENTS

27. On September 19, 1975, Linda Burkey filed a charge with the West Virginia Human Rights Commission which alleged that Defendants were, and had been, unlawfully discriminating against her on the basis of sex in regard to her coaching duties. Plaintiff's Exhibit No. 16.

28. This charge was cross-filed with the Equal Employment Opportunity Commission ["EEOC"], which assumed jurisdiction of the charge on November 24, 1975 (EEOC charge Number 034–60412–7). See Plaintiff's Exhibit No. 20.

29. On March 17, 1976, Mrs. Burkey filed an additional complaint with the West Virginia Human Rights Commission protesting these retaliatory practices. Plaintiff's Exhibit No. 18.

30. On May 23, 1976, Mrs. Burkey filed a second charge with the EEOC (EEOC charge Number 034–61644–1), alleging that

Defendants had retaliated against her for the filing of her initial EEOC charge by transferring her from her teaching position and removing her from her coaching position at Moundsville Junior High School. Plaintiff's Exhibit No. 22.

31. In the fall of 1976 the EEOC consolidated Mrs. Burkey's May 23, 1976, charge of sex discrimination and retaliation with her September 19, 1975, charge of sex discrimination. See Plaintiff's Exhibit No. 23.

32. On November 8, 1976, the EEOC acted upon this consolidated charge and found reasonable cause to believe the Defendants had retaliated against Linda Burkey for the filing of her September 19, 1975, charge of sex discrimination. Plaintiff's Exhibit No. 24.

33. On November 15, 1977, the EEOC issued a determination upon reconsideration as to consolidated charge 034–61644–1, finding reasonable cause that Defendants had discriminated against Linda Burkey on the basis of her sex in the payment of compensation for her coaching duties and that Defendants had retaliated against her for the filing of her September 19, 1975, charge. Plaintiff's Exhibit No. 25. Defendants nevertheless refused to rectify the instances of illegal conduct found to exist by the EEOC, and on January 16, 1978, the Department of Justice issued to Linda Burkey a right to sue letter on this consolidated charge. Plaintiff's Exhibit No. 26.

34. On August 12, 1977, Mrs. Burkey filed a third charge with the EEOC (EEOC charge number 034–771625), alleging that Defendants had retaliated against her for the filing of her two earlier charges by denying her positions as a coach and teacher at John Marshall High School for the 1977–78 school year. Plaintiff's Exhibit No. 27.

35. On September 12, 1976, Linda Burkey filed a complaint with the Department of Health, Education and Welfare, alleging that Defendants were illegally discrimina-

ting against women coaches and girl students on the basis of their sex in the operation of the athletic programs of the Marshall County School District. Plaintiff's Exhibit No. 28.

36. After a four day investigation of the Marshall County School District, the Department of Health, Education and Welfare on August 19, 1977, issued a finding that the district's operation of its girls' athletic program violated the rights of both female coaches, including Linda Burkey, and girl students under Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681–86. Plaintiff's Exhibit No. 30.

37. Defendants have not changed to date policies found to be violative of the law in respect to male and female coaching positions and boys and girls athletic programs.

38. Only after five years of attempts to obtain a resolution of her sex discrimination complaints from within the Marshall County School District and from state and federal administrative agencies had proved unsuccessful, did Linda Burkey, on April 6, 1978, file her complaint in this action. Plaintiff has exhausted available administrative remedies.

## VI. PLAINTIFF'S CLAIM OF SEX DISCRIMINATION BY DEFENDANTS UNDER TITLE VII AND 42 U.S.C. § 1983 IN DENYING HER OPPORTUNITY TO COACH BOYS' SPORTS

39. Defendants Haskins, Eaton, and Lydon have never recommended, and the Defendant Board has never hired, transferred or otherwise assigned, a female teacher to coach boys' sports in the Marshall County School District.

40. During the time since Linda Burkey has been in the employ of the Marshall County Board of Education Defendants have maintained, and continue to maintain, an unwritten policy that female teachers cannot coach boys' sports.[3]

---

**3.** At the May 8, 1974, Level III grievance hearing of the grievance filed by Linda Burkey and Linda Campbell against the Defendant Board,

Superintendent Donald Haskins admitted that it was the unwritten policy of Defendants to deny to female teachers the opportunity to

41. Because of the generally understood policy of Defendants to restrict boys' coaching positions to males and the resultant futility of any application, Linda Burkey has never applied for a position as the coach of a boys' sport.

42. Linda Burkey is qualified to coach boys' basketball and track and possesses qualifications equal, or superior, to most of the males who coach and have coached these sports in the Marshall County School District while she has taught there. These qualifications include her coaching experience in the Marshall County School District (beginning in the 1971–72 school year), her coaching success in the District (31 wins, 4 losses and 1 forfeit), her coaching experience outside the District (in a recreational girls' softball league), her teaching experience in physical education (from the 1970–71 school year to the present, in each of which years she has included units on basketball and track and field in her classes), her academic degree (a masters degree in physical education), and her experience as an athletic participant (as a member of her college teams in girls' basketball, volleyball, softball, and field hockey, and, since college, as a member of an independent softball team). Linda Burkey has also worked with, and taught, boys, as well as girls, the fundamentals of basketball and track and field in her physical education classes. As shown by Plaintiff's Exhibit No. 53, Linda Burkey's qualifications to coach boys' sports are, therefore, equal, or superior, to the following male coaches of boys' sports: Larry Campbell, John Curia, Stanley Blankenship, Danny Prado, Mark Wilson, Allen Underdonk, Mark Hinerman, Harry Storm, William Suddath, Greg Ferris, Michael Ferro, Alfonso Flores, Samuel Furbee and Rickey Blake. See Plaintiff's Exhibits Nos. 1 and 31–44.

43. There was no evidence adduced or assertion made by Defendants that there

was any bonafide occupational qualification or other reason [4] which would prevent qualified women from coaching male teams in the school district.

44. Plaintiff Burkey has been, and continues to be, denied by Defendants the opportunity to coach male sports teams in the school district solely on the basis of her sex.

## VII. PLAINTIFF'S CLAIM OF SEX DISCRIMINATION AND UNEQUAL PAY FOR EQUAL WORK BY DEFENDANTS UNDER TITLE VII, THE EQUAL PAY ACT AND 42 U.S.C. § 1983 IN DENYING HER EQUAL PAY TO THAT RECEIVED BY MALE TEAM COACHES

45. In 1973–74, Burkey was paid two hundred dollars ($200.00) annually to coach girls' basketball while all male coaches coaching boys' junior high basketball were paid four hundred dollars ($400.00) annually. In 1974–75, she was paid two hundred twenty dollars ($220.00) annually, while male coaches received four hundred forty dollars ($440.00). In 1975–76, she received two hundred thirty dollars ($230.00) annually while male coaches received four hundred sixty dollars ($460.00). See Plaintiff's Exhibits Nos. 12C, 12D, 12E and 51.

46. Prior to the 1976–77 school year Defendants maintained the policy, as expressed in the Board's salary indexes, Plaintiff's Exhibits No. 12C, 12D, 12E, of paying the female coaches of girls' junior high school sports one-half of the salary paid to male coaches for coaching the same junior high school sports. This policy was uniformly applied to all female junior high school coaches, regardless of the sport coached.[5]

47. Linda Burkey's position as coach of the girls' basketball team at Moundsville Junior High School during the 1973–74 through 1975–76 school years required

---

coach boys' sports. See Plaintiff's Exhibit No. 14–C, p. 5, and transcript, p. 424.

**4.** Defendant Haskins on this point: "I am not sure that any women at this time would want to apply." Transcript pp. 424–425.

**5.** See footnote 2, *supra.*

work, skill, effort, and responsibility equal to that required of the male coaches of boys' basketball at Moundsville Junior High School during those years. As were the male coaches of boys' basketball, Mrs. Burkey was responsible for selecting, training and coaching in interscholastic competition a junior high school basketball team. Such responsibilities necessitated a knowledge of the rules of girls' junior high school basketball, which were and are identical with the rules of boys' junior high school basketball, as well as a knowledge of the proper techniques of coaching and teaching student athletes. As did the male coaches of the boys' junior high school basketball teams, Mrs. Burkey held daily practice sessions with her team over a basketball season of substantially the same length of time as the boys' season, traveled with her teams to away games, and was responsible for scheduling games for her teams.

48. The only areas of difference between Linda Burkey's coaching responsibilities and those of the male coaches of boys' basketball were insubstantial. To the extent which any such differences may have existed, they were based solely upon Defendants' policy of discriminating against women coaches on the basis of their sex in the opportunities provided to them to coach and to have their teams participate in an identical number of interscholastic games over the same season as did the teams coached by male teachers.

49. The difference in salary between what Linda Burkey was paid to coach girls' sports and what men were paid to coach boys' sports during the same years was based solely upon her sex and was not based upon any factor other than sex.

50. After a four day investigation of the Marshall County School District, the Department of Health, Education and Welfare, on August 19, 1977, issued a finding that the district's operation of its girls' athletic program violated the rights of women coaches and female students under Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681–86. Plaintiff's Exhibit No. 30.

51. In its November 15, 1977, determination upon reconsideration, the EEOC found reasonable cause to believe that Defendants' coaching salary practices and policies constituted unlawful discrimination against Linda Burkey because of her sex. Plaintiff's Exhibit No. 25.

52. Defendants paid Plaintiff Burkey compensation for her coaching position at a rate fifty percent (50%) less than males were paid for substantially equal work and otherwise discriminated with respect to her terms, conditions and privileges of employment because of her sex.

VIII. PLAINTIFF'S CLAIM THAT DEFENDANTS WRONGFULLY, UNDER TITLE VII AND 42 U.S.C. § 1983, TRANSFERRED HER FROM TEACHING POSITION AND REMOVED HER FROM COACHING POSITION IN RETALIATION FOR HER FILING OF SEX DISCRIMINATION CHARGES WITH THE EEOC AND OTHER ADMINISTRATIVE AGENCIES

53. Linda Burkey filed a complaint with the West Virginia Human Rights Commission on September 19, 1975, which alleged that Defendants were, and had been, unlawfully discriminating against her on the basis of sex in regard to her coaching duties. Plaintiff's Exhibit No. 16.

54. This complaint was served upon Defendants by the West Virginia Human Rights Commission on or about October 30, 1975. On November 7, 1975, Defendant Haskins sent a letter to the Commission, acknowledging receipt of the complaint and offering a rebuttal to the charges contained therein. See Plaintiff's Exhibit No. 19.

55. The complaint was also cross-filed with the EEOC, which assumed jurisdiction over it on November 24, 1975. See Plaintiff's Exhibit No. 20.

56. Defendants learned of the EEOC's assumption of jurisdiction over this complaint on or about December 1, 1975, the date on which the EEOC sent to the Marshall County Board of Education a notice of

the complaint. See Plaintiff's Exhibit No. 21.

57. In March of 1976, Defendants Haskins, Eaton and Lydon recommended and approved Linda Burkey's transfer from Moundsville Junior High School and removal from her coaching position at that school.

58. At a Board meeting on March 23, 1976, Linda Burkey was transferred from her teaching assignment at Moundsville Junior High School, where she had taught during her entire six years in the Marshall County School District, to the Consolidated Washington Lands Elementary School. Mrs. Burkey was the only junior high school teacher transferred to this elementary school.

59. At the Board's March 23, 1976, meeting Linda Burkey was also removed from the position of coaching the girls' basketball team at Moundsville Junior High School which she had held for five years. Mrs. Burkey is the only coach of girls' sports ever to have been removed from such a coaching position. She was removed from her position simultaneously with Defendants' creation of a second coaching position for girls' basketball at Moundsville Junior High School.

60. Although Defendant Eaton initially cited "economy measures" as a reason for Linda Burkey's transfer from Moundsville Junior High School to the Consolidated Washington Lands Elementary School this alleged reason was merely pretextual. Linda Burkey's transfer could have resulted in no monetary savings to the school district since at the time the Board transferred her it intended to refill her teaching position at the junior high school. Defendants originally announced that they intended to fill Mrs. Burkey's teaching position at Moundsville Junior High School by transferring Joanne Kutrovac, a special education teacher with no previous coaching experience, from another school to fill that position. Instead, both Linda Burkey's teaching and coaching positions were filled by the hiring of a new teacher, Josette Wilson, who was less qualified by education and experience than Plaintiff Burkey.

61. Defendant Eaton also assigned a "personality conflict" between Plaintiff and Defendant Lydon as a basis for Burkey's transfer and removal from coaching. Such conflict obviously arose and persisted during Burkey's tenure at Moundsville Junior High School. Although the conflict is attributable in part to Burkey's somewhat abrasive manner (demeanor observable by the Court at trial), it nevertheless arose in the undenied context of Burkey making repeated requests of Defendant Lydon and other Defendants to cease or remedy unequal and sex discriminatory practices and conditions and for the assertion of charges before the EEOC and other administrative agencies. The assertion of "personality conflict" as a reason for transfer is pretextual.

62. Subsequent to Plaintiff Burkey's transfer and removal from the coaching position, Defendants contended that these personnel actions were taken for yet another reason. They asserted she was transferred for insubordination to Lydon in regard to the scheduling of a game with a non-school "club" girls team from Shadyside, Ohio. Although this incident may have provided a reasonable basis for some form of discipline, when viewed with totality of evidence this assigned basis for transfer is also pretextual. The Court finds that Plaintiff Burkey would not have been transferred and removed from the coaching position but for her assertion of charges against the Defendants and her continued requests and demand for sex equality regarding compensation, terms and conditions of employment and working conditions.

63. During the time in which Linda Burkey has been employed by the Defendant Board several other teachers in the Marshall County School District have coached athletic teams at schools other than the school at which they taught.

64. Linda Burkey was one of only two teachers to be removed from all of his or her coaching assignments by the Board at its March 23, 1976, meeting.

65. The Board, upon the recommendation and with the approval of Defendants Haskins, Eaton and Lydon, hired forty-one new teachers for the 1976–77 school year. Five of these new teachers were given coaching positions.

66. Defendants retaliated against Linda Burkey for her filing of a charge with the EEOC by transferring her from the teaching position which she had held for six years at Moundsville Junior High School and removing her from the coaching position which she had held at that school for five years.

IX. PLAINTIFF'S CLAIM THAT DEFENDANTS WRONGFULLY, UNDER TITLE VII AND 42 U.S.C. § 1983, DENIED HER COACHING AND TEACHING POSITIONS AT JOHN MARSHALL HIGH SCHOOL IN RETALIATION FOR HER FILING OF SEX DISCRIMINATION CHARGES WITH THE EEOC IN 1975 AND 1976.

67. In the spring and summer of 1977 Linda Burkey applied for openings as coach of the girls' basketball and track teams at John Marshall High School and as a physical education teacher at that high school. She did not receive the appointment as coach and teacher.

68. There is no direct evidence to support this claim and it would be unwarranted speculation to draw an inference of retaliation in regard to the John Marshall coaching and teaching opportunity. This claim was not proved.

X. *OTHER DEFENSES TO ALL CLAIMS*

69. After being advised of their obligations as employers under Title VII and the

Equal Pay Act and being made subject of complaints and charges under those laws and others, Defendants persisted in willful disregard of Plaintiff's rights. Defendants acted or refused to act in regard to Plaintiff's rights willfully and in bad faith.

CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and the parties under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, providing for relief against sex discrimination in employment; by 28 U.S.C. § 1343(3) and the Civil Rights Act of 1871, 42 U.S.C. § 1983,[6] providing relief for deprivations under color of State law of rights, privileges and immunities and guaranteed by laws of the United States;[7] by the Equal Pay Act, 29 U.S.C. § 206(d)(1), providing for relief from discrimination on the basis of sex in compensation for the performance of jobs requiring equal skill, effort and responsibility and through 28 U.S.C. § 1331.

2. Coaching contracts awarded by boards of education in West Virginia are, by law and practice, one year contracts and nontenured. See *State ex rel. Hawkins v. Tyler County Board of Education,* W.Va., 275 S.E.2d 908 (1980).[8]

3. A board of education has extensive discretion under statute in West Virginia to transfer teachers and employees, *W.Va. Code,* 1931, § 18A–2–7, as amended. *Bates v. Board of Education of Mineral County,* 133 W.Va. 225, 55 S.E.2d 777 (1949).

4. A teacher has no personal right or property right[9] under the United States

---

6. Linda Burkey's earlier action at Civil Action No. 76–16–W arising solely under 42 U.S.C. § 1983 was dismissed without prejudice on October 18, 1976. Since there was no judgment on the merits the doctrines of res judicata and/or collateral estoppel are inapplicable. See generally *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, n. 5, 58 L.Ed.2d 552 (1979).

7. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Blue v. Craig,* 505 F.2d 830, 835–838 (4th Cir. 1974).

8. Federal courts may resort to state law to resolve civil rights actions where laws of the United States are not adapted to the object. 42 U.S.C. § 1988. *Scott v. Vandiver,* 476 F.2d 238, 242 (4th Cir. 1973).

9. Burkey makes no claim of implication of a "liberty" interest. See *Wisconsin v. Constanti-*

Constitution to a limited, nontenured coaching contract, where state law provides none, and no cause of action may be implied by the Court where Congress has been given the power to enforce constitutional provisions by appropriate legislation. See *Paul v. Davis*, 424 U.S. 693, 710–712, 96 S.Ct. 1155, 1164–65, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 576–578, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972); see and cf. *Cale v. City of Covington*, 586 F.2d 311 (4th Cir. 1978).

5. There is no administrative remedy for a plaintiff to exhaust under 42 U.S.C. § 1983,[10] and 29 U.S.C. § 206, *et seq.*

6. With respect to Title VII Linda Burkey's charges of discrimination were timely and otherwise correctly filed with the West Virginia Human Rights Commission on September 19, 1975, (over which the EEOC assumed jurisdiction on November 24, 1975), and with the EEOC on May 23, 1976, and August 12, 1977.[11] The January 16, 1978, right to sue letter from the Department of Justice was issued in accordance with Title VII.

■ 7. Defendants Cassis, Dobbs, Logston, Wilson, Barger, Anderson, Gould, Haskins, Eaton and Lydon are all "persons" within the meaning of 42 U.S.C. § 1983. *Scheuer v. Rhodes*, 416 U.S. 232, 237–238, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

8. In West Virginia a county board of education is not a local unit of government. *Boggs v. Board of Education of Clay County, W.Va.*, 244 S.E.2d 799 (1978).

■ 9. A county board of education in West Virginia is a state agency and as such is entitled to sovereign immunity under West Virginia Constitution, Article VI, § 35, *Boggs v. Board of Education of Clay County, supra.*

■ 10. A state and its agencies are absolutely immune from 42 U.S.C. § 1983 under the Eleventh Amendment because a state is not a person within the meaning of 42 U.S.C. § 1983. *Boggs, supra. Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). See *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

■ 11. Because a state is immune under the Eleventh Amendment, a county board of education in West Virginia is not subject to a teacher's claim for back pay or an award of damages over it in a § 1983 action. *Quern v. Jordan, supra; Edelman v. Jordan, supra; Boggs v. Board of Education of Clay County, supra.* See and cf. *Mayberry v. Dees*, 638 F.2d 690 (4th Cir. 1981).

12. The Defendant Marshall County Board of Education is not a person within the meaning of 42 U.S.C. § 1983.[12]

*neu*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

10. A litigant need not exhaust state judicial or administrative remedies of similar scope before resort to § 1983 action. *Strader v. Troy*, 571 F.2d 1263 (4th Cir. 1978); *McCray v. Burrell*, 516 F.2d 357 (4th Cir. 1975) *cert. dism.* 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976). Likewise, abstention is an improper procedure. *Houghton v. Shafer*, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); *Damico v. California*, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967).

11. A complainant need not first file with a state agency as a prerequisite to filing a retaliation charge under § 704 of Title VII. Compare and contrast § 703 of Title VII.

12. "The bar of the Eleventh Amendment to suit in federal courts extends to states and state officials in appropriate circumstances, *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Dept. of Treasury, supra*, [323 U.S. 459, 464–466, 65 S.Ct. 347, 350–51, 89 L.Ed. 389 (1945)] but does not extend to counties and similar municipal corporations. See *Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 (1890); *Moor v. County of Almeda*, 411 U.S. 693, 717–721, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973)." The issue of whether a *board of education* "is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend ... depends, at least in part, on the nature of the entity created by state law." *Mt.*

■ 13. Actions seeking remedies of *prospective* relief against state officials and county officials for violations of the Fourteenth Amendment or statutes in aid thereof are not prevented by the Eleventh Amendment. The Eleventh Amendment provides no shield for a state official or county board member who is confronted by a claim that he has deprived another of a federal right under color of state law. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

14. The county board member or school official is, in that case, stripped of his official or representative character and is subjected *in his person* to the consequences of his individual conduct. *Scheuer v. Rhodes, supra*, at p. 237, 94 S.Ct. at 1686.

■ 15. County board members and school officials may be subject to a § 1983 action, although the board is not, because the officials' actions were taken under color of state law. *Rodgers v. Tolson*, 582 F.2d 315 (4th Cir. 1978).

■ 16. Members and former members of a board of education in West Virginia and supervising officials employed by the board are entitled to raise the defense of qualified good faith immunity against a § 1983 action for discretionary acts performed in the course of their official conduct. *Scheuer v. Rhodes; Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *cf. Mayberry v. Dees, supra.*

17. ' Members and former members of the Marshall County Board of Education and supervising officials employed by the Board are entitled to raise the defense of qualified immunity from personal monetary liability as individuals. *Owen v. City of Independence*, 445 U.S. 662, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Wood v. Strickland, supra; Paxman v. Campbell*, 612 F.2d 848 (4th Cir. 1980).[13]

18. If the Defendant Board members and school officials are found to be liable in their individual capacities, the measure of damages would not be the equitable one of back pay but instead the value of the contract defendants wrongfully broke. *Burt v. Bd. of Trustees*, 521 F.2d 1201, 1204 (4th Cir. 1975) (money damages).

■ 19. Where monetary damages are sought, the general doctrine of respondeat superior does operate to affix responsibility; the Plaintiff must prove *personal* involvement of a defendant to recover from him. *Owen v. City of Independence, supra; Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

■ 20. Defendant Marshall County Board of Education is an employer within the meaning of Title VII and the Equal Pay Act. A state instrumentality does not have an eleventh amendment defense to either Title VII or the Equal Pay Act. See *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (Title VII) and *Usery v. Charleston Cty. Sch. Dist.*, 558 F.2d 1169 (4th Cir. 1977) (Equal Pay Act).

*Healthy City Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).

In an unequivocal, but sharply divided (3–2), decision the Supreme Court of Appeals of West Virginia resolved a longstanding conflict on this point and held that boards of education were integral units of State government, entitled to its immunities, while other units of county governments were not. *Boggs v. Board of Education of Clay County, supra.* Just four years prior to the *Boggs* decision, that Court also definitely resolved a related conflict and held that cities were not entitled to claim the State's sovereign immunity, *Higginbotham v. City of Charleston*, 157 W.Va. 724, 204 S.E.2d 1 (1974), nor were they immune at common law.

*Long v. City of Weirton*, W.Va., 214 S.E.2d 832 (1975). Believing the resolution of this is best left to the state which created the entity in question and apprehending no overriding federal constitutional principle to be in conflict, this Court, in the spirit of federalism, accedes to the designation of the board of education as a state agency as determined by West Virginia.

**13.** A school board member or official is not immune from liability for damages under § 1983. If he knew or reasonably should have known that the action he took within the sphere of his official responsibility would violate the constitutional and statutory rights of the teacher affected. Plaintiff has not alleged nor contended Defendants acted with malice.

21. Defendants Cassis, Dobbs, Logston, Wilson, Barger, Gould, Anderson, as board members and/or former board members, and Haskins, as the Superintendent of the Board, are employers within the meaning of Title VII and the Equal Pay Act, since they "control" Linda Burkey's employment. *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338, 1341–42 (D.C. Cir. 1970); *Puntolillo v. New Hampshire Racing Commission*, 375 F.Supp. 1089, 1091–92 (D.N.H.1974) and *Beeman v. Middendorf*, 425 F.Supp. 713, 714 (D.D.C.1977).

22. Defendants' policy of restricting coaching positions for boys' sports to male teachers constitutes and has constituted, illegal discrimination against Linda Burkey on the basis of her sex, and operates, and has operated, to deny her the rights accorded her by Title VII and 42 U.S.C. § 1983.

23. Since Defendants' policy as to boys' coaches was generally known within the Marshall County School District, Linda Burkey was not required to perform the futile act of applying for a job coaching boys' sports as a prerequisite to filing her cause of action. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). See also, *White v. Carolina Paperboard Corp.*, 564 F.2d 1073, 1086 (4th Cir. 1977).

24. Linda Burkey was and is as qualified to coach boys' athletics as most of the males who have and are coaching boys' athletics within the Marshall County School District.

25. Defendants' refusal to permit Linda V. Burkey to coach boys' sports solely because of her sex constitutes an unlawful employment practice under Title VII and 42 U.S.C. § 1983. See for proof requirements and burden of proof: *Texas Dept. of Community Affairs v. Burdine*, — U.S. —, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Ambush v. Montgomery County Government*

*Division of Revenue*, 620 F.2d 1048, 22 F.E.P. Cases 1101 (4th Cir. 1980); *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

26. Defendants paid Linda V. Burkey less than male coaches were paid for the same or comparable work solely because of her sex. Cf. *Brennan v. Woodbridge School District*, 9 F.E.P.O. 969 (D.Del.1974) (job coaching girls' softball substantially equivalent to that of job coaching boys' softball). See *Brennan v. Prince William Hospital Corp.*, 503 F.2d 282 (4th Cir. 1974).

27. Defendants' policy of not compensating Linda V. Burkey for coaching girls' basketball (prior to 1973–74) or for compensating her at only one-half (½) of the salary paid to the male coaches of basketball constituted illegal discrimination against Linda V. Burkey on the basis of her sex and has operated to deny her the rights accorded her by Title VII, 42 U.S.C. § 1983 and the Equal Pay Act, 29 U.S.C. § 206(d)(1).

28. Defendants' refusal to pay Linda V. Burkey a salary for coaching basketball, equal to the salary paid male coaches for coaching basketball constitutes an unlawful employment practice under Title VII and 42 U.S.C. § 1983.[14]

29. Defendants transferred Linda V. Burkey from her teaching position at Moundsville Junior High School and removed her from her coaching position at that school in retaliation for her filing of a sex discrimination charge with the EEOC.

30. Defendants' retaliation against Linda V. Burkey for filing a charge of sex discrimination with the EEOC violated rights accorded her by Title VII and 42 U.S.C. § 1983.

31. The statute of limitations for purposes of a claim under Title VII for back pay is two years prior to the date the EEOC

---

14. Subsequent pay raises may provide a strong inference that an employee was underpaid because of her sex. See e. g. *Roesel v. Joliet Wrought Washer Co.*, 596 F.2d 183 (7th Cir. 1979). The Defendants' eventual agreement, after complaint, to pay Burkey and other coaches one-half that paid coaches of male teams coupled with ultimate agreement to equalize coaching salaries, again after Plaintiff persisted in her claim of sex discrimination, constitutes evidence of unlawful salary practice arising from sex discrimination.

charge was filed. 42 U.S.C. § 2000e–5(g). *White v. Carolina Paperboard Corp.*, 564 F.2d 1073 (4th Cir. 1977). Since Linda V. Burkey filed a timely charge with the EEOC on November 24, 1975, she is entitled to recover under Title VII for all back pay losses she incurred after November 24, 1973.

 32. The statute of limitations for purposes of a claim under the Equal Pay Act for back pay and "an additional equal amount as liquidated damages" is two years for non-willful violations, and three years for willful violations from commencement of the action. 29 U.S.C. §§ 216(c) and 255(a). Since Plaintiff filed this action on April 6, 1978, she is entitled to recover double back pay losses she incurred after April 6, 1975.

 33. The liability period for purposes of a claim under 42 U.S.C. § 1983 is that time limitation that would be applicable in the West Virginia State courts for a person seeking similar relief. See generally, *Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Davis v. United States Supply*, 581 F.2d 335 (3rd Cir. 1978); *Mason v. Owens-Illinois*, 517 F.2d 520 (6th Cir. 1975); *Tatum v. Golden*, 570 F.2d 753 (1978). The most of analogous period of limitation in West Virginia is that for breach of an implied contract. *W.Va.Code*, 1931, § 55–2–11. This section has been construed to apply to implied employment contracts. See *Western v. Buffalo Mining Co.*, W.Va., 251 S.E.2d 501, 503 (1979). Thus, the applicable statute of limitations is five years. Since Plaintiff filed this action on April 6, 1978, she is entitled to recover on her 42 U.S.C. § 1983 claims for losses incurred after April 6, 1973.

33. Plaintiff is entitled to recover back pay from April 6, 1978, to November 25, 1973, in the total amount of $178.35 from the individual Defendants Cassis, Dobbs, Logston, Gould and Anderson.[15]

34. Plaintiff is entitled to recover back pay from November 26, 1973, to June 30, 1976, in the total amount of $796.75 pursuant to the remedies provided by Title VII and the Equal Pay Act against the Defendants Cassis, Dobbs, Logston, Gould, Anderson and Haskins in their official capacities as Board Members and Superintendent and as employers.[16]

35. Plaintiff is entitled to recover back pay from July 1, 1976, until the date Defendants comply with the order of affirmative relief, *infra*, at rates payable to junior high school basketball coaches during that period of time, pursuant to the remedies provided by Title VII and the Equal Pay Act against the Defendants Cassis, Dobbs, Logston, Gould, Anderson, Wilson, Barger and Haskins in their official capacities as Board Members and Superintendent and as employers.

36. Because teaching personnel in West Virginia are not entitled to claim travel pay for regular and extracurricular duties, Plaintiff is not entitled to an award of compensatory damages reflecting travel claims.

37. Because the remaining Defendants did not act maliciously in respect to Plaintiff, but rather accepted and acted upon recommendations of Principal Lydon and school district officers Haskins and Eaton, Plaintiff is not entitled to an award of punitive damages.

38. Pursuant to the remedies provided by 42 U.S.C. § 1983 and Title VII, the Defendants are ORDERED to offer the Plaintiff the next available vacant physical education teaching position occurring in junior high or grades above and further to offer her the head coach's position for girls basketball at any such school where there is offered a teaching position.

39. Inasmuch as Plaintiff is the party substantially prevailing, she is entitled un-

---

**15.** The Defendants are not liable for back pay as Board Members under a pure 1983 claim. *Mayberry v. Dees*, 638 F.2d 691, Part IV, 694; *Boggs v. Board of Education of Clay County*, W.Va., 244 S.E.2d 799 (1978).

**16.** See Conclusion of Law 20, *supra*.

der the law to make application for an award of reasonable attorneys fees as a part of the costs.

40. The Plaintiff is entitled to judgment, and for such part as represents a money award for back pay, interest at the legal rate, and costs in her behalf expended.

## ON MOTION TO AMEND

In accordance with the Memorandum Order Containing Findings of Fact and Conclusions of Law of this Court entered on March 16, 1981, the Court hereby ORDERS as follows:

1. That Linda V. Burkey recover back pay in the total amount of $380.00 from the individual Defendants Cassis, Dobbs, Logston, Gould and Anderson for denying Plaintiff basketball coaching opportunities comparative to that offered male junior basketball coaches during the 1973 basketball season.

2. That Linda V. Burkey recover back pay in the total amount of $880.00 against the Defendant Marshall County Board of Education and the board member Defendants Cassis, Dobbs, Logston, Gould, Anderson, Wilson and Barger, in their official capacities, for denying Plaintiff basketball coaching positions comparable to that offered male junior basketball coaches during the 1974, 1975 and 1976 basketball seasons. No board member shall be liable for any back pay for any period in which he was not a board member.

3. That Linda V. Burkey recover back pay from the Defendant Marshall County Board of Education and the board member Defendants Cassis, Dobbs, Logston, Anderson, Wilson and Barger in their official capacities beginning with the 1977 basketball season until the date Defendants comply with the order of affirmative relief, paragraph 5 infra, at rates payable to junior high school basketball coaches during that period of time. No board member shall be liable for any back pay for any period in which he was not a board member.

4. That Linda V. Burkey is not entitled to an award of punitive damages.

5. That the Defendant The Marshall County Board of Education and the Board Members of the Marshall County Board of Education and Defendant Haskins as superintendent of the Marshall County Board of Education are ORDERED to offer to Linda V. Burkey the next available vacant physical education teaching position occurring in junior high or grades above and further to offer her the head coach's position for girls basketball at any such school where there is offered a teaching position.

6. That Linda V. Burkey is entitled to interest at the legal rate on the back pay awards set forth in Paragraphs 1 to 3 inclusive and costs including attorneys fees expended on her behalf to be awarded against Defendant Marshall County Board of Education and the Defendant individual board members Cassis, Dobbs, Logston, Gould and Anderson for establishing her right to back pay pursuant to paragraph 1 of this Order and the Defendant Marshall County Board of Education and the Defendant board members in their official capacities for the back pay awarded established pursuant to Paragraphs 2 and 3 of this Order.

7. That the Motion of Defendant Marshall County Board of Education, Anderson, Cassis, Dobbs, Logston and Gould to alter or amend the judgment is denied except as otherwise indicated in this Amended Judgment Order and that their Motion for Judgment Notwithstanding the Verdict or a New Trial is likewise denied. To which act by the Court the Defendants object and except to the Court's ruling.

8. That the Motion of Defendant Donald A. Haskins to alter or amend judgment is granted as indicated herein, and that Plaintiff's Motion to Amend Judgment is granted as also indicated herein.

9. That the time for Plaintiff to file her motion for attorneys fees, costs and expenses is enlarged until twenty (20) days after this amended judgment becomes final. See generally, *DeLong Corp. v. Raymond Intern., Inc.,* 622 F.2d 1135, 1138–39, n. 3 (3rd Cir. 1980).

10. That this action except for the reserved issue of costs including attorneys fees be, and the same hereby is, DISMISSED from the active docket of this Court.